47 So.3d 519 (2010)
Cynthia BRIDGES, Secretary, Louisiana Dept. of Revenue, Plaintiff-Appellant
v.
HERTZ EQUIPMENT RENTAL CORPORATION, Defendant-Appellee.
No. 45,647-CA.
Court of Appeal of Louisiana, Second Circuit.
August 11, 2010.
Rehearing Denied September 16, 2010.
*520 Jack Marks Alltmont, Max Nathan, Jr., Peter Stephen Title, Sharon Cormack Mize, Robert F. Mulhearn, Jr., Monica Doss Washington, Shone T. Pierre, David Michael Hansen, Antonio C. Ferachi, Donald Bowman, Miranda Conner, New Orleans, LA, for Appellant.
Phelps Dunbar, LLP, New Orleans, LA, by Harry Rosenberg, Christopher K. Ralston, Stephanie Villagomez, for Appellee.
Before BROWN, WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
This appeal was transferred to this court from the fifth circuit court of appeal by order of the Louisiana Supreme Court due to a conflict between an attorney and the fifth circuit which required the recusal of that entire court.
In this suit filed by the Louisiana Department of Revenue ("LDR") to collect sales and use taxes owed by Defendant, Hertz Equipment Rental Corporation ("HERC"), a wholly owned subsidiary of the Hertz Corporation ("Hertz"), for calendar years 1999-2002, the sole issue is whether or not express authority is required for an employee to bind the corporation to a written agreement to suspend prescription. On cross motions for summary judgment, the trial court granted summary judgment in favor of HERC, holding that express authority is required as a matter of law. This appeal by LDR ensued. For the reasons stated herein, we affirm.

FACTS
LDR was conducting sales and use tax audits of HERC for the years 1999-2002. With respect to the audit period at issue, the audit was not completed by mid-2002 and the three-year prescriptive period within which LDR could have filed suit for the unpaid taxes would have otherwise run on December 21, 2002. Thus, LDR sent to HERC an "Agreement to Suspend Prescription" for a one-year period in accordance with La. R.S. 47:1580.[1] The assistant secretary (a corporate officer) of HERC signed the first agreement, which LDR countersigned and returned to HERC for its files. Over the next several years, the audit continued and LDR continued to send suspension agreements to HERC. These agreements were signed by Armando Cordova, an employee of Hertz, and were then countersigned by LDR and returned to HERC for its files. Cordova signed as "Taxpayer's Authorized Representative" in his capacity as Director-Tax Audits for Hertz. It is not disputed that Cordova was an employee of Hertz and not a corporate officer of HERC.
The record reflects that agreements to suspend prescription, such as the agreements at issue herein, were routinely executed between HERC and LDR. Prior such agreements had been signed on behalf of HERC, Hertz and Hertz Vehicle Sales Corporation by Bob Wines as Manager-Tax Audits, Cordova's predecessor, and such agreements had gone unchallenged. Apparently, special powers of attorney were created for the execution of some of these agreements, but not all. It is undisputed that the position of Director-Tax *521 Audits had complete authority to handle all tax audit issues, including settling audits, preparing formal petitions, representing the company at administrative hearings, negotiating with auditors and supervisors and responding to information and document requests. Moreover, all parties agree that Cordova was the sole representative of HERC responsible for communicating with LDR on behalf of the corporation.
With the agreements to suspend prescription in place, the status quo was maintained until the audit was complete. Following completion of the audit, settlement negotiations regarding the amount of taxes owed by HERC were unsuccessful and this suit to collect taxes owed was filed by LDR prior to the expiration of the agreed on suspension date.
As previously stated, LDR filed suit and HERC responded by filing an Exception of Prescription, in which it argued that Cordova did not have the express authority to agree to suspend prescription on behalf of the corporation. LDR countered that Cordova had actual-implied and/or apparent authority to execute the agreements, which was sufficient to bind the corporation. LDR propounded discovery on the issue of Cordova's authority and HERC filed a motion for a protective order to stay discovery pending a decision on the Exception of Prescription. Cross motions for summary judgment were filed and the trial judge ultimately granted summary judgment in favor of HERC, finding that the claim of LDR had prescribed. Accordingly, the trial judge further found HERC's request for a protective order to be moot.
On appeal, the fifth circuit affirmed the summary judgment, holding that express authority was required in order for Cordova to suspend prescription on behalf of HERC. Bridges v. Hertz Equipment Rental Corp., 07-717 (La.App. 5th Cir.1/22/08), 977 So.2d 150. The supreme court granted LDR's writ application and reversed the summary judgment on the issue of discovery, finding that LDR was entitled to discovery of documents that may be relevant to the authority of Cordova, but the court expressly declined to rule on the issue of whether express authority was required. Bridges v. Hertz Equipment Rental Corp., 08-0400 (La.6/20/08), 983 So.2d 1256. The matter was remanded to the trial court for further discovery.
Following the completion of discovery, the trial court again held that the claim of LDR had prescribed because LDR remained unable to produce evidence that Cordova had the requisite express authority to bind the corporation to an agreement to suspend prescription. Indeed, LDR concedes that Cordova did not have express authority to bind the corporation via the agreements to suspend prescription. LDR instead relies on the theories of actual-implied and apparent authority and, alternatively, detrimental reliance. The trial judge characterized the agreement to suspend prescription as the waiver of HERC's constitutional defense of the three-year prescriptive period[2] and, therefore, found that express authority was required in order to bind the corporation to such agreement. In support, the trial judge cited the fifth circuit case of Bridges v. X Communications, Inc., 03-441 (La. App. 5th Cir.11/12/03), 861 So.2d 592, writ *522 denied, 03-3431 (La.2/20/04), 866 So.2d 830. In its reasons for judgment, the trial court explained its ruling as follows:
The court is asked to address a single issue: did Cordova have authority to sign the prescription suspension agreements recognizing that such waivers are not among those specifically listed requiring express corporate authority in C.C. arts. 2296 and 2297? The Fifth Circuit's opinion in X Communications, supra, directly addresses this issue and dictates that LDR must establish Cordova's express authority conferred by charter, bylaws, or board resolution. LDR has failed in its burden. Cordova's job description offered by plaintiff demonstrates that he is an employee and not an officer; he falls within the Fifth Circuit's bright line rule requiring express authority. Plaintiff's alternate theories of detrimental reliance and actual-implied and apparent authority also fail to establish Cordova's express authority and would only side-step the Fifth Circuit's requirements.
LDR appealed the judgment to the fifth circuit; and, as stated, the appeal was transferred to this court.

DISCUSSION
The appellate court's review of a grant or denial of a summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.
As previously stated, the issue in the case sub judice is a narrow question of law, i.e., whether or not an employee must have express authority to bind his or her corporate employer to an agreement to suspend prescription. We find that, under the law in effect at the time the instant agreements were executed, such express authority was required; and, since it is undisputed that Cordova did not have express authority to execute the agreements to suspend prescription, we further find that the trial judge properly granted summary judgment in favor of HERC.[3]
La. C.C. art. 2996 provides that "the authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property nor its location need be specifically described." La. C.C. art. 2997 provides a list of additional acts for which express authority must be given to a mandatary:
Authority also must be given expressly to:
(1) Make an inter vivos donation, either outright or to a new or existing trust or other custodial arrangement, and, when also expressly so provided, to impose such conditions on the donation, including, without limitation, the power to revoke, that are not contrary to the other express terms of the mandate.
(2) Accept or renounce a succession.
(3) Contract a loan, acknowledge or make remission of a debt, or become a surety.
(4) Draw or endorse promissory notes and negotiable instruments.
(5) Enter into a compromise or refer a matter to arbitration.
(6) Make health care decisions, such as surgery, medical expenses, nursing home residency, and medication.
*523 In addition, as mentioned earlier, in X Communications, supra, the fifth circuit held that an agreement to suspend prescription had to be signed by an individual with express authority to do so. The factual scenarios of X Communications and the case sub judice are strikingly similar. In X Communications, the tax controller of the corporate defendant signed form agreements to suspend prescription on tax claims. The form agreements were similar to the ones at issue herein and, as here, were supplied by the Department of Revenue. It was the common practice of the parties to execute such agreements and both employees and officers/shareholders of the corporation had signed such agreements on behalf of X Communications, Inc. After reviewing the general principles of mandate and corporate authority to act on behalf of a corporation, the fifth circuit explained its holding as follows:
... we find the act of surrendering or waiving[4] a corporation's legal right, such as prescription, is the type of act that requires an express power. [footnote omitted] Where a document bearing such legal significance is involved, the other party should be on notice that express authorization is necessary for the agent to sign it. Any state agency can readily discover the officers of a domestic corporation from the secretary of state's office....
Bridges v. X Communications, Inc., supra. In so holding, the fifth circuit relied on the rules of corporate authority, stating:
The authority to act on behalf of a corporation can only be conferred by the charter or the bylaws of the corporation or by resolution of the board of directors. La. R.S. 12:81(A), 12:82(D); McKendall v. Williams, 467 So.2d 1301, 1303 (La.App. 4 Cir.), writ denied, 469 So.2d 986 (La.1985).
A party seeking to enforce an alleged contract against a corporation is required to establish that the officer or agent with whom he contracted was in fact authorized to bind the corporation. North American Sales Alliance, Inc. v. Carrtone Laboratories, Inc., 214 So.2d 167, 172 (La.App. 4 Cir.), writ denied, 253 La. 57, 216 So.2d 306 (1968). Any action taken in the name of a corporation that is unauthorized by the corporation cannot bind the corporation. Marsh Investment Corp. v. Langford, 490 F.Supp. 1320, 1324 (E.D.La.1980), affd, 652 F.2d 583 (5th Cir. Unit A Aug. 1981), cert. denied sub nom., Ponchartrain State Bank v. Marsh Investment Corp., 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).
Based on the above law, we find that the trial judge correctly held that express corporate authority was required in order for Cordova to bind HERC to the agreements to suspend prescription. LDR failed to carry its burden of establishing that express authority of Cordova. The arguments urged by LDR regarding any actual-implied or apparent authority of *524 Cordova are misplaced. Further, we find LDR's argument that it detrimentally relied on the agreements and is thus entitled to damages to be without merit. Accordingly, we hold that the claims of LDR are prescribed and HERC is entitled to judgment as a matter of law.

CONCLUSION
For the foregoing reasons, the summary judgment of the trial court in favor of Hertz Equipment Rental Corporation is affirmed. Costs are not assessed against the Louisiana Department of Revenue in accordance with La. R.S. 13:4521.
AFFIRMED.
BROWN, Chief Judge, dissents with written reasons.
BROWN, Chief Judge, dissenting.
The suspension agreements were executed to preserve the status quo and were for the mutual benefit of HERC and LDR while they tried to amicably resolve the audit and assessment. See Chicago Bridge and Iron Co. v. Cocreham, 303 So.2d 750 (La.App. 1st Cir.1975). Otherwise, LDR would have issued a final assessment of taxes and/or filed suit, which would have interrupted prescription. The position of HERC is disingenuous and unjust.
Clearly, HERC's Tax Audit Director, Armando Cordova, had actual and apparent authority to sign the agreements suspending prescription for one year. This was sufficient to bind HERC.
Further, it is undisputed that Cordova acted for HERC in its dealing with LDR and signed these agreements with HERC's full knowledge. He acted in accordance with HERC's policy. LDR relied on this apparent authority and deferred filing its action. The rule of detrimental reliance is applicable.

APPLICATION FOR REHEARING
Before BROWN, C.J., and WILLIAMS, GASKINS, CARAWAY & PEATROSS, JJ.
Rehearing denied.
BROWN, C.J., would grant rehearing.
NOTES
[1] The prescriptive period for a claim to collect taxes is three years. La. Const. Art. VII, § 16, infra. This period may be suspended by written agreement between the taxpayer and the Department of Revenue. La. R.S. 47:1580.
[2] Louisiana Constitution, Art. 7, Section 16, contains the prescriptive period for the collection of taxes and provides as follows:

Taxes, except real property taxes, and licenses shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law.
[3] LDR urges this court to go outside of the fifth circuit for law and guidance in this case. Since, however, this appeal is before this court as the result of a transfer of venue, we will interpret and apply the law as espoused by that court. Bonin v. Ferrellgas, Inc., 02-1031 (La.App. 3d Cir.8/6/03), 855 So.2d 781, rev'd on other grounds, 03-3024 (La.7/2/04), 877 So.2d 89.
[4] Throughout the opinion, and as strenuously noted by the appellant, the fifth circuit in X Communications characterizes the agreements to suspend prescription as waivers of prescription. In footnote 1, however, the court recognizes that the form actually just suspends the right for a year rather than waiving the right. We find this to be curious since it is the magnitude of forgoing the right that provides the foundation for the fifth circuit's requirement of express authority. While we decline to expressly hold that agreements to suspend prescription such as the one at issue herein constitute waivers, we nonetheless feel constrained to follow the dictates of the clear holding of the fifth circuit in X Communications, supra, that express authority is required to bind the corporate defendant to such agreements.